Case number 22-1195 United States v. Pattison May it please the court, my name is Jay Opsiowicz and I'm here on behalf of the defendant appellant Stephen Reed Pattison. This morning I'm going to ask you to vacate the judgment and remand the case to the district court for resentencing on the grounds that his 96-month sentence is both procedurally and substantively unreasonable. I've raised two points in my briefs. The first point relates to procedural reasonableness, that is the district court committed an error when it concluded that the criminal history category 4 underrepresented the seriousness of his prior record and that it upwardly departed without providing my client notice that it was going to do so. This contradicts the requirements of Rule 32H of the Federal Rules of Criminal Procedure. My second point relates to substantive reasonableness and that is that his 96-month sentence is greater than necessary to serve the purposes of sentencing. It's my intention this morning to focus primarily on the first point related to the procedural error that the court's failure to provide Mr. Pattison notice that it intended to upwardly depart to rely on the briefs for the challenge was procedurally unreasonable. Under Rule 32H, the district court must give the parties reasonable notice that it is contemplating a departure if the ground for departure is not identified in the PSR or in a party's pre-hearing submission. According to the record in this case... Can I just pause right there? Yes, sir. Didn't the government specify that it was seeking an above guidelines? It said it was seeking a variance. Yes, that is correct, Your Honor. It did not say it was seeking a departure because the basis for the variance that the government was seeking was really just 3553A factors and their focus, while they mentioned criminal history, they really were concerned about the characteristics of Mr. Pattison. And they weren't saying that his criminal history was underrepresented. They were just talking about his criminal history in terms of his characteristics and for all implications saying that he's a bad guy, so he deserves a sentence above the agreed to guideline range. So what additional notice are you saying was required? The court should have, under Rule 32H, told the parties before sentencing that it was contemplating departing upward or, if it was doing so, departing downward. That's set forth in Rule 32H, and it's also been set forth in the predecessor, in the Supreme Court case that led to the 2002 adoption of the rule in, I believe it's Burns v. United States. Under the rule, the court was supposed to give notice. In the PSR, it was clear that there was no notice that there was the possibility of a departure. In fact, the PSR stated the probation officer has not identified any factors that would warrant a departure from the applicable sentencing guideline range. So that's very clear. That's what we learned from the PSR. It was not giving the defense any idea that the court was considering a departure or that a departure was possible. In the government sentencing memorandum, which I now, in hindsight, apologize for not including in the joint appendix of the stock at Item 33, and at sentencing, the government argued for an above guideline sentence based on the nature and circumstances of the offense. While they spoke about the criminal history, they were really talking about Mr. Patterson's characteristics. He was a bad guy in their alliance. They didn't like his ideology. They were concerned that his beliefs were abhorrent. They may be. It would be very easy to reach that conclusion. But it's not a basis to say that his criminal history is insufficient. So, Counsel, this looks like one of those sentencings at which the district judge anchored himself in the guidelines and found a way to use the guidelines through a 2CHC departure and a 2 offense level variance to get to the sentence he thought was right. Is this a case in which he was going to get to 8 years no matter what, and so the difference between departure and variance is harmless, or is this a case where it matters that 32H was, and I don't think you're probably, there's clearly no notice here of an actual departure, so that that 32H violation, assuming that it exists, was harmless in effect? No, I would say that it is not harmless because in preparing for sentencing, defense counsel, if defense counsel was aware, and I was not the counsel at sentencing, if defense counsel was aware that the court was considering a departure based on the criminal history, he would have addressed criminal history very differently. He addressed criminal history at sentencing in terms of the same way that the government did, in terms of what Mr. Patterson's characteristics were like, and just talking about it that it's sufficient. If he was aware that the court was going to look at each prior act that he was involved with in terms of it being insufficient, counsel then could have prepared to address each of these types of acts that the court was concerned about to argue that this was not sufficient. So notice does become important here, and that's why we feel that it should go back because you do need to have an idea of what the court is looking to rely on in imposing sentence. And the language of the departure requires the departure to be anchored in specific concerns, right? Yes. Substantially understated or substantially underestimates the risk of recidivism as opposed to the history and characteristics of this person are that he's terrible and we should give him more time. Correct, Your Honor. Yes. So we can see from the record that no notice was given. We know that when the court decided to depart, it did so not on the basis of the government's motion, not on the basis of the government's variance. It says so in the record, and more importantly it says so in the statement of reasons. The court clearly indicates that this was solely on the court's own decision to depart. Thus, the court should have given notice to the parties that it was considering to do so. And the failure to do so did prejudice my client at sentencing. Unless the panel has further questions, I have reserved some time for rebuttal. Thank you, counsel. We'll hear from the government. Good morning. May it please the court, my name is Tiffany Lee and I represent the United States. We are here today because of the issue, mainly because when the district court imposed the sentence of 96 months, it found itself tethered to the language of the guidelines. And Judge Larimer actually explains his background in sentencing. He says, I've been sentencing for 35 years. There used to be a time when I could just come up with a number from the heart and that would be fine. But now we have the Sentencing Reform Act, we have these guidelines, which provides a methodology in order to explain, to create a sense of uniformity. But that said, Judge Larimer emphasized that his starting point started with this consideration of the Section 3553A factors. And we have to understand that this appeal is being brought against the standard of plain error review. So to the extent that notice had not been given, proper notice under Rule 32H, and to the extent that the error was plain, which the government does not concede because of the fact that not only did the government advise that it was going to be seeking an outside guideline sentence to the statutory maximum. Isn't the notice supposed to come from the court? The court is the one doing the sentencing, and the rule requires that the court give notice, not that the government give notice. The court will ask for more. I think the rule requires that the court give notice to the extent that it's not apparent in the party submissions or the PSR that there is a basis for departure. Now here, because of the fact that Judge Larimer anchored part of his adjustment to that final number of 96 with using the criminal history category departure, that's kind of, you know, it's, again, not quite plain, whether it was error for him not to have provided notice to the parties that I am definitely going to go and use underrepresented history category as a I think Judge Larimer just felt that he needed to show the math. When I was teaching my kids common core math, you had to show how you arrived at your solution, and he just wanted to use the language of the guidelines buttressed by consideration of the 3553A factors. So in terms of looking at Mr. Patterson's criminal history, you have a person who was involved in a lot of crimes of violence, which Judge Larimer felt had not been adequately considered in terms of the categorization of him as criminal history category four. I guess that leads me to ask, I'm used to saying adversary, but I know it's more common to say your friend on the other side. And he is a friend. Very good. Raised the idea that to the extent that the judge was finding that his criminal history was underrepresented, that, in fact, this number, this does not reflect the seriousness of your criminal history. The idea that had he known that, had Mr. Patterson known, like, oh, the judge is actually going to focus on my criminal history as a basis for changing this category, that that would have changed the nature of the preparation for the sentencing, which, in fact, did seem to focus more on some of the 3553A character factors. And had he known, oh, the judge is really concerned about my prior convictions, let me address those more and say why they're actually not underrepresented and they're not as serious. And the fact that since there was not notice that that's what the judge was going to focus on, that that's what the harm from that is. To the extent that there is harm, though, at the end of the day, when against the plain error review standard, the question is, is this a harm that affects substantial rights? Is there a reasonable probability that the harm was such that the absence of notice and the absence of preparation, you know, would have changed the outcome of the proceeding? And to that, I would say no. In fact, at the sentencing hearing, defense counsel did say, you know, I don't think that criminal history category is too low for somebody like Mr. Patterson. You know, he was able to kind of pivot and, you know, look at what the criminal history category was against the possible metric of underrepresentation and said, I don't think it's too low. This is, you know, he had already gone over the offenses for which Patterson had previously been convicted. What the 3553A factors, though, that were kind of baked into this whole decision to kind of shift Mr. Patterson's criminal history comes from the danger which Mr. Patterson posed or the district court felt that the danger Mr. Patterson posed based on his previous conduct, based on the fact that he was convicted most recently of being a felon in his inability to comply with probation or parole. All these things kind of led him to the conclusion that, you know, in terms of the math, the math did not work out for him per the guidelines. And that's why he wanted to shift and explain how he got to 96 months. So to turn my question to your friend on its head sort of, again, this is a judge that he did explain he's gone through this and everyone who's been sentencing throughout the guidelines era, many people anchor themselves to this table I've got in front of me. So isn't it possible that given how anchored he was, if he decided after targeted argument from defense counsel that, you know, that two level criminal history category increase is not supported under the repeatedly refers to 4A1.3. He doesn't just say he's got a bad criminal history, right? He clearly anchors himself in the departures language, but that there's a possibility that without that two criminal history category increase, if he'd stuck with only the two offense level increase, we'd be down in a range of 57 to 71. And this defendant would be looking at in the range of six years instead of eight years because this judge is saying, I need to find a way within the guidelines to sort of do the math. And if this piece of the math doesn't work, my outcome will be different. I don't think, I don't think that he would have necessarily been completely unmoored. He may have made an adjustment on the offense level in his mind. He wasn't going to sentence Mr. Patterson to what the government requested, which was the statutory maximum of 10 years. He certainly wasn't going to go there, but in his mind, he needed, he wanted to get to 96 months, which is actually the high end of that range in which he was looking at. And I think he, you know, to the extent that he, if we could, unmoor Judge Larimer, everything that he said, as to counsel's, my friend's second point of the argument about whether the sentence in and of itself is substantively reasonable, everything else that you said, subtracting any mention of two a 1.3 from his sentencing colloquy, you can see that this is definitely fundamentally anchored in a thorough consideration of the section 3553 factors. So I think on this record, when you read his sentence, how he painfully went through nature and characteristics of the defendant, criminal history, the conduct here, and the, his whole notion that, you know, past his prologue for this person who has been involved in racially tinged moments of violence, you know, and there, you know, he was very concerned about the danger Mr. Patterson posed to society against all the 3553 factors. That is how he justified the sentence of 96 months. And accordingly, this court should affirm. Thank you. We'll hear a rebuttal. It's rather interesting that how the direction, the question has been turning and the way the government presents the question they want to, the focus is going on how the court reached its decision as opposed to whether or not council knew what the court was going to do. And I think here the issue is how was, how was council supposed to know that the court was intending to depart? And that's where the problem lies. Yes. Council tried to address sentencing, the criminal history at sentencing, but that was on the spot to address the characteristics of the defendant in the way the government had presented their argument for a variance in this case. It's clear when the court made its decision, it was doing so not based on what the government said. If we look at the statement of reasons portion of the judgment, the court said it was solely on its decision, not by emotion or by a request from the parties or by anything in the PSR council was unaware that a departure was going to happen in this case. And in doing so he was prejudiced because he could have presented the criminal history in a different light in the same way that the court looked at it to try to go through all the different factors in Mr. Patterson's criminal history to show that it was fully addressed as the guidelines found. So this is where the problem lies, not how the math was conducted, but whether or not council was advised and prepared to address this issue. If we follow the government's theory and that it's okay just because the government raises in their sentencing memorandum the term criminal history or says that sentencing, oh yes, he also has a criminal history that that's enough to trigger rule 32 H. In fact, the effect of that would be to throw out the rule. There'd be no point to give the parties notice because all the government would have to say is, oh yeah, he also has a criminal history. He's a bad guy. You should sentence him higher and above the guidelines for it. Given this problem, we request that and for the reasons set forth in our brief as to the substantive reasonableness, I request that you vacate the judgment and send this back to the court for resentencing.